IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**WILLIAM T. MAYFIELD**                                                                                    **PLAINTIFF**
**#659228**

V.                                       NO. 4:23-cv-01214-ERE

**WADE GILLIAM,** *et al.*                                                                               **DEFENDANTS**

## ORDER GRANTING SUMMARY JUDGMENT[1]

**I.    Overview**

On December 26, 2024, *pro se* plaintiff William T. Mayfield filed this lawsuit under 42 U.S.C. § 1983, alleging that officers at the Saline County Detention Center ("Detention Center") failed to protect him from an inmate attack on November 26, 2023 ("November 26 incident"). *Doc. 2*. Defendants are Captain/Jail Administrator Wade Gilliam and Deputy/Correctional Officers Shakara King, Mollie Blain, and Noah Alvarez.[2] Mr. Mayfield sues each Defendant in his or her individual and official capacities and seeks monetary and injunctive relief.

---

[1] The parties consented in writing to have a United States Magistrate Judge conduct all proceedings in this case including but not limited to entry of final judgment. *Doc. 54*.

[2] The Clerk is instructed to update the docket sheet to reflect the full names of Defendants Blain and Alvarez – Mollie Blain and Noah Alvarez. *Docs. 79-2; 79-4*.

Defendants have now filed a motion for summary judgment, supporting brief, and statement of facts. *Docs. 77, 78, 79*. Mr. Mayfield has responded (*Doc. 81*), and Defendants' motion is now ripe for review.

For reasons explained below, Defendants' motion for summary judgment (*Doc. 77*) is granted.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must come forward with specific facts demonstrating a material dispute for trial. *See* FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if -- but only if -- the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. *See* FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

Even when the parties dispute exactly what happened, summary judgment may still be appropriate. First, "[o]nly disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Doe v. Dardanelle Sch. Dist.*, 928 F.3d 722, 725 (8th Cir. 2019) (omitting citation). Second, while the court must construe all evidence in a light most favorable to the party opposing summary judgment, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment" *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Background

#### A. Mr. Mayfield's Version of Events[3]

During his January 21, 2025 deposition, Mr. Mayfield recounted that on November 26, 2023, a muscular inmate known as Mohawk "beat [his] ass bad." *Doc. 79-5 at 7, 15*. A related jail incident report identifies "Mohawk" as Keston Damarius Muldrew. *Doc. 79-1*.

Mr. Mayfield testified that for a month before the November 26 incident, he told "them," in person and through the Detention Center kiosk system, that he felt threatened in his pod and requested to be transferred. *Doc. 79-5 at 7*. However, Mr. Mayfield could not recall a specific instance before the November 26 incident when

---

[3] These facts are taken from Mr. Mayfield's deposition testimony. *Doc. 79-5.*

he reported to any one of the named Defendants that he felt threatened or wanted to move from his pod.

Mr. Mayfield stated that before the November 26 incident, he sent a kiosk message to Lieutenant Burrus (a non-party) after inmate Muldrew had repeatedly threatened to steal his commissary items. *Id. at 39-40*. Detention Center records confirm that on October 17, 2023, Mr. Mayfield posted a message on the kiosk system to Lieutenant Burrus stating that he was "scared to death" in his pod and was not safe. *Doc. 79-1 at 78*. However, in a follow-up posted two days later, he reported that he had "made some friends" and was "good in here now." *Id. at 77*. And on October 27, Mr. Mayfield posted that his October 17 grievance was "resolved." *Id*.

Mr. Mayfield explained that other inmates made him withdraw his October 17 kiosk grievance to Lieutenant Burrus. He stated that "they" extorted him and stole his "stuff" and knew about his kiosk message because they "would get on [his] tablet." *Doc. 79-5 at 40*. Importantly, however, Mr. Mayfield specifically conceded that no named Defendant knew about his October 17 kiosk message to Lieutenant Burrus. *Id. at 43* ("They didn't know nothing about the kiosk."). In addition, he stated: "I'm only accusing them of not stopping [the fight] and pulling me out." *Id. at 43-44*.

Later in his deposition, Mr. Mayfield stated that he wrote Defendant Gilliam a letter "because [he]wanted something to be done." *Id. at 46*. However, he provided no details regarding the content or timing of his letter to Defendant Gillam.

Mr. Mayfield stated that the day of the incident, he and inmate Muldrew were in the chow hall waiting in line for a food tray. *Id. at 20-21*. Mr. Mayfield believed that inmate Muldrew was planning to steal his tray and told him, "You ain't getting my tray." *Id. at 21*. Mr. Mayfield and inmate Muldrew then engaged in a verbal argument, which Mr. Mayfield estimated lasted "probably a minute." *Id. at 22*.

Mr. Mayfield recalled that each Defendant was present in the chow hall, watching and laughing as he and inmate Muldrew argued. *Id. at 23*. He initially stated that Defendants King, Alverez, and Blain were just "standing" in the doorway and "didn't even come in" but then recalled that King, Alverez, and Blain stood in the doorway serving food with Defendant Gilliam. *Id. at 24*. When asked whether he was sure that Defendant Gillam, a jail captain and administrator, was serving food to inmates, Mr. Mayfield responded, "What I remember, yeah." *Doc. 79-5 at 24*. He stated, "I was a little disillusioned, but I know he was there." *Id. at 47*. Later in his deposition, however, Mr. Mayfield acknowledged that Defendant Gillam was not present during the physical altercation and "came up afterwards." *Id. at 49*.

Mr. Mayfield recounted that his one-minute squabble with inmate Muldrew turned physical—that inmate Muldrew suddenly began hitting him, and he attempted

5

to block the blows by raising his arms. *Id.* He stated that inmate Muldrew "wailed on me[,]" "smoked my ass[,]" and "walked me all the way across the floor . . . from wall to wall." *Doc. 79-5 at 26-27*. Mr. Mayfield stated that he could not recall how may "licks" he took because he blacked out.[4] *Id. at 26*.

Mr. Mayfield estimated that the physical part of the altercation lasted "a good 30 seconds," and he opined that Defendants should have used a taser to stop inmate Muldrew. *Id. at 22, 28, 45, 47*.

Mr. Mayfield initially testified that he heard "guards" say, "Fuck that white boy, beat his ass." *Id. at 16.* Later in his testimony, when asked to name the guards who made those statements, he recalled only that Defendant King said, "beat him up." *Id. at 27.* When asked how he knew Defendant King was the person he heard say "beat him up," Mr. Mayfield explained, "I know her voice. [She] was the only black lady working there." *Id.*

Mr. Mayfield stated that he heard an "all call" for officer assistance only "after the dude done beat me up." *Id. at 27*. It is undisputed that after the incident, Detention Center officials transported Mr. Mayfield to the Saline County Memorial Hospital, where medical staff made no diagnosis. *Id. at 29*. Mr. Mayfield complains

---

[4] At one point during his deposition, Mr. Mayfield inexplicably stated, "*They* were holding my head and they got me down on the ground. *They* brought me all the way across the pod and everything." *Doc. 79-5 at 16* (emphasis added). When asked whether he was stating that more than one person attacked him, he responded, "You're right. I did say there was only one guy." *Id.*

6

that he suffered swelling and continues to have ringing in his ears as a result of the incident. *Id. at 30, 32*.

### B.     Defendants' Version of Events[5]

Each Defendant has submitted an affidavit regarding the November 26 incident. Defendant Gillam states that he was not present during the incident (*Doc. 79-1 at 2*), which agrees with Mr. Mayfield's ultimate testimony Defendant Gillam "came up afterwards."

Consistent with Mr. Mayfield's testimony and the related jail incident report, Defendants Alvarez and Blain state that on November 26, 2023, at approximately 4:50 p.m., they were serving "chow" in H pod when inmate Muldrew and Mr. Mayfield began arguing. Defendants Alvarez and Blain both state that when the inmates began to "get into each other's faces," Defendant Blain told them to separate. *Docs. 79-2 at 1; 79-3 at 1*. Both Defendants recall that inmate Muldrew initially began to walk away, but Mr. Mayfield said something, which caused inmate Muldrew to turn and walk back toward Mr. Mayfield. *Id*. According to Defendants Blain and Alverez, both inmates began swinging at the other, Defendant Blain "then" advised Defendant Alverez to call for an "all available," and "when both detainees

---

[5] These facts are taken from Defendant Gilliam's jail file and each Defendants' affidavit. *Docs. 79-1; 79-2; 79-3; 79-4*.

ended the fight and separated . . . , they were . . . escorted out of H pod after gathering their belongings." *Docs. 79-2 at 2; 79-3 at 1-2.*

Defendants Alvarez and Blain state that the "entire event" lasted approximately 45-60 seconds. *Id.* This is consistent with Mr. Mayfield's testimony that his verbal argument with inmate Muldrew lasted a minute, and the physical altercation lasted 30 seconds.

Defendant King states that on November 26 at approximately 4:50 p.m., she was assigned to the booking desk when she heard Defendant Alvarez call for an "all available." *Doc. 79-4 at 1.* Defendant King states that she did not leave her assigned station in booking, where Mr. Mayfield was escorted after his altercation with inmate Muldrew. *Id.*

Each Defendant testified that he or she was unaware of any request by Mr. Mayfield to be assigned to a different pod. *Docs. 79-1 at 2; 79-2 at 2; 79-3 at 2; 79-4 at 1.*

## IV. Discussion

### A. Individual-Capacity Claims

Mr. Mayfield claims that each Defendant: (1) failed to protect him by moving him to another pod before the November 26 incident; and (2) failed to take any action to stop the November 26 incident once it began.

The Eighth Amendment[6] "requires prison officials to take reasonable measures to guarantee inmate safety by protecting them from attacks by other prisoners." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "Yet a constitutional claim does not lie every time one inmate attacks another. Rather, prison officials violate the Eighth Amendment only when they exhibit a 'deliberate or callous indifference' to an inmate's safety." *Id*. To prevail on a failure-to-protect claim, an inmate must show: "(1) an objective component, [that] there was a substantial risk of harm to the inmate, and (2) a subjective component, [that] the prison official was deliberately indifferent to that risk." *Id*. (cleaned up). An official is deliberately indifferent only if he or she actually knows of the substantial risk of harm and fails to take reasonable measures in response. *Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010) (quoting *Farmer*, 511 U.S. at 837). "Negligence on the part of the prison official is insufficient to satisfy the subjective component. The official must recklessly disregard a known, excessive risk of serious harm to the inmate. *Norman v. Schuetzle*, 585 F.3d 1097, 1104 (8th Cir. 2009).[7]

---

[6] At the time of the November 26 incident, Mr. Mayfield was detained for a parole violation on a prior conviction. *Doc. 79-5 at 12*. Accordingly, his claims are analyzed under the Eighth Amendment, which applies to convicted prisoners.

[7] An unpublished decision in *McCrary v. Baldwin,* 500 Fed. Appx. 551, 551–52 (8th Cir. 2013) incorrectly indicates that *Norman* was overruled on other grounds by *Pearson v. Callahan,* 555 U.S. 223 (2009). However, the Eighth Circuit has noted: "The Supreme Court decided *Pearson* in January 2009, nearly ten months before we decided *Norman.* Consequently, *Pearson*

Each Defendant asserts qualified immunity, which protects government officials from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). At the summary judgment stage, a defendant is entitled to qualified immunity unless: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). "District courts may address these two questions in any order but may not deny qualified immunity without answering both questions in the plaintiff's favor." *Walton v. Dawson*, 752 F.3d 1109, 1116 (8th Cir. 2014) (citation omitted).

Finally, in deciding the question of qualified immunity, I cannot treat Defendants as "one unified group," but must consider each Defendant's conduct to determine whether evidence against that "individual officer [is] sufficient to overcome qualified immunity." *Manning v. Cotton*, 862 F.3d 663, 668 (8th Cir. 2017) (quoting *Roberts v. City of Omaha*, 723 F.3d 966, 974 (8th Cir. 2013)).

---

could not have overruled *Norman*." *Walls v. Tadman*, 762 F.3d 778, 783 (8th Cir. 2014).

### 1. Failure to Prevent the Attack

Mr. Mayfield argues that Defendants were deliberately indifferent to his safety by failing to move him to another pod before the November 26 incident. However, he specifically testified that he did not notify Defendants King, Blain, or Alvarez about problems he was having with inmate Muldrew before the November 26 incident. Although Mr. Mayfield requested assistance from non-party Lieutenant Burrus, he acknowledged that Defendants were not aware of his kiosk message to her. *Doc. 79-5 at 43*.

In addition, although Mr. Mayfield testified that he wrote a letter to Defendant Gilliam about problems he was having in his pod, he failed to explain: (1) the date of the letter; (2) specific information he included the letter; or (3) whether Defendant Gilliam actually received any such letter.

Because Mr. Mayfield has failed to provide any evidence that a single Defendant had specific knowledge that inmate Muldrew posed a threat to his safety before the November 26 incident, no reasonable juror could conclude that a named Defendant was subjectively aware that inmate Muldrew posed a danger to Mr. Mayfield and demonstrated deliberate indifference to his safety by failing to move him to another pod. As a result, each Defendant is entitled to qualified immunity on this claim.

## 2. Failure to Act Once the Attack Began

Prison officials have no duty to physically intervene in a prison fight if it doing so would cause them serious injury or worsen the situation, *Arnold v. Jones*, 891 F.2d 1370, 1372 (8th Cir. 1989), and they are only required to "take reasonable measures to abate substantial risks of harm, of which [they] were aware." *Blades v. Schuetzle*, 302 F.3d 801, 803 (2002) (quoting *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995)).

For example, in *Cohrs v. Norris*, 210 F.3d 378 (8th Cir. 2000), the Eighth Circuit denied qualified immunity to a prison guard who, from the safety of his control booth, did nothing and watched for twenty-five minutes while an inmate was beaten by several other inmates. Similarly, in *Martinez v. Norris*, 751 Fed. Appx. 959 (8th Cir. 2019), the court affirmed denial of qualified immunity where facts showed that in the course of fifteen minutes, an inmate attacked several fellow inmates in full view of guards, who did nothing.  Conversely, the Eighth Circuit has affirmed the grant of qualified immunity in cases involving a surprise inmate attack, where prison guards had insufficient time to intervene. *Tucker v. Evans*, 276 F.3d 999, 1002 (8th Cir. 2002) ("[B]y the time Daniels knew something was wrong, the fight was already over. Therefore . . . Daniels would not have been able to intervene in time to rescue Tucker."); see also *Schoelch v. Mitchell*, 625 F.3d 1041, 1047–48 (8th Cir. 2010) (concluding that a physical attack that followed a lunch-line quarrel

played out so quickly that it was finished before a prison guard reasonably could have intervened).

### a. Defendant Gilliam

Although Mr. Mayfield initially testified that Defendant Gilliam was present during the November 26 incident, he later clarified that Defendant Gilliam arrived after the altercation ended. *Doc. 79-5 at 49*. No reasonable factfinder could conclude that Defendant Gilliam, who was not present at the time of the attack, demonstrated deliberate indifference to Mr. Mayfield's safety by failing to intervene. Defendant Gilliam is clearly entitled to qualified immunity on this claim.

### b. Defendants Blain and Alvarez

It is undisputed that during the verbal argument between Mr. Mayfield and inmate Muldrew, which preceded the physical confrontation, Defendant Blain directed them to separate, and Mr. Muldrew began walking away but then turned and walked back toward Mr. Mayfield after Mr. Mayfield said something to him.[8] According to Mr. Mayfield, inmate Muldrew then suddenly began beating him, and

---

[8] *Docs. 79, ¶ 10* (Defs.' Stmt. Facts); *79-2, ¶ 3* (Blain Aff.); *79-3. ¶ 3* (Alvarez Aff.). Although instructed to do so (*Doc. 80 at 3*), Mr. Mayfield failed to submit a statement of facts pursuant to Local Rule 56.1. Thus, all uncontroverted, material facts set forth in Defendants' statement of facts are deemed admitted.

In his response in opposition to summary judgment, Mr. Mayfield states that he read in a report that *Defendant King* told him and inmate Muldrew to separate. *Doc. 81 at 2* (emphasis added). He states: "That is a lie. The only thing Deputy King had ever said was, "Fuck that white boy" and "[b]eat his ass." *Id*. Mr. Mayfield fails to controvert Defendants' statement of facts and affidavit testimony that *Defendant Blain* directed he and inmate Muldrew to separate.

13

"walked him all the way across the floor . . . from wall to wall." *Doc. 79-5 at 27*. Mr. Mayfield could not say how may "licks" he took because he blacked out. *Id. at 26*. I credit Mr. Mayfield's testimony that after 30 seconds or so, inmate Muldrew stopped the attack. *Doc. 79-5 at 25* ("The only reason he stopped is because, I guess, he thought I was dead or something. I was on the ground.").

It is undisputed that after the physical altercation began, Defendant Blain told Defendant Alverez to call for officer assistance. Mr. Mayfield agrees that someone called for assistance but contends that they "called after the dude done beat me up." *Doc. 79-5 at 28*.

It is unclear how Mr. Mayfield, who was on the ground and rendered unconscious from the attack, could recall when Defendant Alvarez called for assistance. Although I am obliged at the summary judgment stage to credit all evidence that favors Mr. Mayfield, I am not required to select and credit only those portions of his deposition testimony that weigh in his favor while ignoring inconsistencies. Elsewhere in his testimony, Mr. Mayfield indicated that Defendant Alvarez called for assistance *while* the 30-second physical altercation was in progress. Specifically, he stated: "Instead of calling for help, they should have just pulled out a taser and shot the dude, you know." *Id.* In sum, Mr. Mayfield offers no congruent account regarding when the call for help occurred or evidence that

Defendant Blain or Alvarez purposely waited until after inmate Muldrew stopped hitting him to call for officer assistance.

By Mr. Mayfield's own account, the physical attack lasted only 30 seconds, and there is no evidence that a call for assistance could have been made sooner or that additional officers could have arrived and stopped the altercation before inmate Muldrew voluntarily stopped the attack.  Nor is there evidence that Defendants could have abated harm to Mr. Mayfield by employing a taser.

The facts, viewed in a light most favorable to Mr. Mayfield, fail to show that actions taken by Defendant Blain and Alvarez, even if arguably negligent, amounted to deliberate indifference. Both Defendants are therefore entitled to qualified immunity on claims that they demonstrated deliberate indifference by failing to take reasonable action once the attack began.

### c.   **Defendant King**

As with Defendants Blain and Alvarez, given the suddenness and brevity of the November 26 incident, and the undisputed call for additional officers, no reasonable fact finder could conclude that inaction on Defendant King's part amounted to deliberate indifference.[9]

---

[9] Defendant King states that she was not present in H pod; she was stationed at the booking desk when the November 26 incident occurred. *Doc. 79-4 at 1*. For the purpose of summary judgment review, I accept Mr. Mayfield's testimony that Defendant King was present in H pod at the time, serving food to inmates.

Mr. Mayfield's allegations against Defendant King are somewhat different from those against the other Defendants. In addition to alleging that she failed to act once the altercation began, he alleges that she stated, "beat his ass." However, he does not contend that Defendant King's alleged utterance incited or caused the attack, which he acknowledges happened suddenly on the heels of his verbal argument with inmate Muldrew. Nor does Mr. Mayfield assert that Defendant King's words exacerbated his injuries, and I cannot speculate that such is the case. *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir 2008) (citation omitted) ("As with any summary judgment motion, while we are required to make all reasonable inferences in favor of the non-moving party, we do not resort to speculation.").

Viewing the facts in a light most favorable to Mr. Mayfield, Defendant King's alleged words, while despicable, did not amount to an Eighth Amendment violation. See *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992) (concluding that officer's use of racial slur and threat to knock prisoner's teeth out was not actionable); but see *Burton v. Livingston*, 791 F.2d 97, 99–100 (8th Cir. 1986) (recognizing an exception to the general rule that verbal harassment does not amount to a constitutional deprivation where prison guard engaged in a "wanton act of cruelty" by subjecting a prisoner to death threats and racial epithets at gunpoint.) The facts, viewed in a light most favorable to Mr. Mayfield, fail to demonstrate that

Defendant King subjected him to a constitutional violation, and she is therefore entitled to qualified immunity on this claim.

### B. Official-Capacity Claims

Mr. Mayfield's official-capacity claims are functionally claims against Saline County. *Brewington v. Keener,* 902 F.3d 796, 800 (8th Cir. 2018). Saline County cannot be held vicariously liable under § 1983 for the acts of county employees, and can face liability only when its own policies, customs, or practices cause a constitutional deprivation. *Id.*, 902 F.3d at 801-02. Here, Mr. Mayfield fails to present any evidence that would allow a reasonable juror to conclude that a Saline County policy, practice, or custom caused his injury. As a result, Defendants are entitled to judgment as a matter of law on Mr. Mayfield's official capacity claims.

### V. Conclusion

IT IS THEREFORE ORDERED THAT:

1. Defendants' motion for summary judgment (*Doc. 77*) is GRANTED.

2. Pursuant to the Judgment entered with this Order, Mr. Mayfield's claims are DISMISSED, with prejudice.

3. The Clerk is instructed to close this case.

Dated 2 June 2025.

_____
UNITED STATES MAGISTRATE JUDGE